[No. 19467.   In Bank.—December 10, 1894.]

## CHARLES R. GRAY, ADMINISTRATOR, ETC., APPELLANT, *v.* THE FARMERS' EXCHANGE BANK, RESPONDENT.

ESTATE OF DECEASED PERSONS—ACTION BY ADMINISTRATRIX—RECOVERY OF LIFE INSURANCE COLLECTED — DEFENSE — CONSISTENCY OF ANSWER— PURCHASE OF DRAFT.—In an action by an administratrix to recover the amount of a draft for insurance upon the life of the decedent, alleged to have been deposited in the bank defendant merely to be collected for the use of the estate, there is no inconsistency between a denial, for want of information and belief, that the draft was executed for the use and benefit of the estate, and an affirmative allegation in the answer that the defendant purchased and paid for the draft, and such affirmative allegation is a defense to the action.

ID.—CREDIT FOR PRIVATE DEBT OF ADMINISTRATRIX.—Where the evidence shows that the administratrix in her private capacity borrowed money from the defendant bank, and had given her note with surety to the bank, and that the bank in purchasing the draft for the insurance money due to the estate for insurance upon the life of the decedent paid part thereof in cash, and by arrangement with the administratrix credited her upon her own private note to the bank for the remainder of the purchase money, the bank is not liable to an action for the recovery of the money collected from the insurance company in the absence of an allegation that the administratrix was in default to the estate, to the detriment of the heirs or creditors.

ID.—INVOLUNTARY TRUST—ABILITY OF ADMINISTRATRIX TO ACCOUNT— PRESUMPTION.—The bank does not become an involuntary trustee of the estate to the extent of the application upon the purchase money of the draft of the private debt of the administratrix to the bank if the administratrix fully accounted, or was able, ready, and willing to account, for the sum for which she was accountable, and it must be presumed, in the absence of allegation or proof to the contrary, that she was thus able, ready, and willing, and that there was no breach of trust upon her part to the injury of the estate of the decedent, and that no beneficiary of the estate has any cause of action against the administratrix as trustee or otherwise.

ID.—ENFORCEMENT OF TRUST—CAUSE OF ACTION AGAINST ADMINISTRATRIX. An involuntary trust can be enforced against persons who come into possession of trust property only to the same extent, in the same manner, and with like force and effect as against the original trustee; and there is no cause of action against one who purchases a draft from the administratrix in part consideration of her private debts, unless the administratrix has failed to account for that part of the proceeds of the draft which was applied to the payment of her private debt.

ID.—PRESUMPTION OF DISCHARGE OF OFFICIAL DUTY.—It must be presumed, in the absence of allegations and evidence to the contrary, that an administratrix has obeyed the law and performed her official duty, and

that all the property and money of the estate for which she was accountable at the time of her death has passed into the possession of her successor.

Id.—Pleading—Variance—Contract—Trust.—Where the cause of action alleged in the complaint is based upon a special contract with the administratrix to collect a draft for the use of the estate there can be no recovery upon the theory of a constructive involuntary trust, as to which no allegations are made in the complaint, and which are not sufficiently proved by the evidence.

Appeal from a judgment of the Superior Court of the County of San Bernardino and from an order denying a new trial.

The facts are stated in the opinion.

*Charles R. Gray*, and *E. R. Annable*, for Appellant.

*Elmer E. Rowell*, for Respondent.

Vancliff, C.—F. C. Suhr died intestate in the county of San Bernardino in May, 1887, and on June 18, 1887, Ada Suhr, his widow, was appointed administratrix of his estate.

On July 5, 1887, Ada Suhr, in her private capacity, borrowed ten thousand dollars from the defendant bank, to secure the payment of which she and John Ruffen gave to the bank their joint and several promissory note for that sum, payable July 20, 1887, with interest at one per cent per month. As between Mrs. Suhr and Ruffen he was merely a surety, and received no part of the money borrowed.

Before any payment was made on this note, to wit, October 1, 1887, Ada Suhr indorsed and delivered to the defendant the following instrument:

"No. 954.           San Francisco, Sept. 28, 1887.

" Three days after sight pay to the order of Ada Suhr, administratrix of the estate of Ferdinand C. Suhr, deceased, ten thousand dollars, and charge to the account of loss under policy number 62,670.      F. C. Suhr.

"To New England Mutual Life Insurance Co., Boston, Mass.                Henry K. Field,

" $10,000.                     " General Agent."

This instrument was indorsed by Mrs. Suhr as administratrix, etc.

Before, and at the time of this transaction, and until December, 1890, Ada Suhr had a running private account, and also a distinct account as administratrix with the defendant bank.

On July 6, 1891, she commenced this action, alleging that, as administratrix, she indorsed the draft on the insurance company, and deposited it with the bank merely to be collected for the use of the estate of F. C. Suhr; that the bank had collected the full sum for which it was drawn, but had paid to the estate of F. C. Suhr only the sum of three thousand three hundred and forty-three dollars thereof, and praying judgment for the balance of six thousand six hundred and fifty-seven dollars.

The answer of the defendant is to the effect that the bank purchased the draft from the administratrix and paid her therefor, at the time of the purchase, the full face value thereof; and denies that said draft was ever taken or received by defendant for collection for the use of said estate.

Pending the action the administratrix died, and the appellant, Charles R. Gray, having been appointed administrator, was substituted as plaintiff on March 8, 1892.

The court found that the answer of defendant, as above stated, was true, and adjudged that plaintiff take nothing by the action.

Plaintiff appeals from the judgment and from an order denying his motion for a new trial.

1. The appellant contends, in effect, that the answer contains no defense to the action, and consequently that all findings by the court in conflict with the complaint are outside of any material issue, and that plaintiff is entitled to judgment on the pleadings.

This point is founded upon an alleged inconsistency of that part of the answer above stated with certain denials therein. But I perceive no such inconsistency.

There is a denial, for want of information or belief, that Field executed the draft for the use and benefit of the estate of Suhr, deceased; but this, though apparently inconsistent with the face of the draft, is not inconsistent with the affirmative allegation in the answer that defendant purchased and paid for the draft, such as it was. Besides, the affirmative part of the answer is stated as a further and distinct answer, introduced by the following formula: "Further answering, defendant alleges." There was no demurrer to the answer and no motion to strike out any part of it. I think the pleadings and findings support the judgment.

2. Appellant contends that the evidence is insufficient to justify the findings.

It appears that the business of transferring to the bank the draft on the insurance company was transacted by and between Ada Suhr and Mr. Morse, who was then cashier of the bank, and who died before the trial of this action, but when he died does not appear. It does appear, however, that he ceased to be cashier of the bank on the last day of November, 1887, one month after the transaction, and was succeeded by Mr. Zombro, who was general book-keeper at the time of the transaction.

Mr. Zombro and the president of the bank, Mr. Drew, were called as witnesses for the plaintiff, and produced all the books of the bank called for by plaintiff. John Ruffen and the appellant also testified on behalf of plaintiff, but no evidence appears to have been introduced by defendant.

The testimony of the witnesses and the documentary evidence strongly tend to prove that defendant purchased the draft and paid for it three thousand three hundred and forty-three dollars, in cash, and, with the consent or at request of the administratrix, credited six thousand six hundred and fifty-seven dollars, on her private note made by herself and Ruffen, as above stated. Assuming that the crediting of six thousand six hundred and fifty-seven dollars on the note, with

the consent of the administratrix, was valid and lawful as between her and the bank, the evidence clearly shows that the defendant was not indebted to the estate of F. C. Suhr, nor to Ada Suhr, individually, in any sum, at the time this action was commenced.

The substance of appellant's contention, however, is that, inasmuch as the face of the draft notified defendant that it was held by Ada Suhr, as administratrix, in trust for the estate of F. C. Suhr, the application of it, or any part thereof, even at her request, to the payment of her private debt made the defendant an involuntary trustee of the draft to the extent of its application to the payment of her debt, citing section 2243 of the Civil Code, which provides: "Every one to whom property is transferred in violation of a trust holds the same as an involuntary trustee under such trust, unless he purchased it in good faith and for a valuable consideration."

But the complaint does not state, nor the evidence tend to prove, a cause of action under this rule. In order to charge the defendant as an involuntary trustee of the draft or of the money applied on the Ruffen note, it should appear that the administratrix (the original trustee) was in default to the detriment of the *cestui que* trust (heirs or creditors). If the administratrix had fully accounted, or was able, ready, and willing to account to the estate at all proper times for all property and money for which she was accountable, as it must be presumed she was, then there was no breach of trust on her part to the injury of the estate or the heirs of F. C. Suhr, and consequently no beneficiary of the original trust has any cause of action against her, either as trustee or otherwise. And, since an involuntary trust can be enforced against persons who come into possession of trust property only *to the same extent,* in the same manner, and with like force and effect *as against the original trustee,* there is no cause of action against the defendant, unless the administratrix has failed to account for that part of the proceeds of the draft which was ap-

plied to the payment of her private debt. (*Lathrop* v. *Bampton*, 31 Cal. 17; *Theller* v. *Such*, 57 Cal. 460; Pomeroy's Equity Jurisprudence, sec. 1048.) For aught that appears she may have advanced and paid on account of the estate from her private funds (possibly from the ten thousand dollars borrowed on the Ruffen note) a sum equal to that to be applied to the payment of said note. Besides, it is to be presumed, *prima facie*, that she obeyed the law, and performed her official duty; and, consequently, that all the property and money of the estate for which she was accountable at the time of her death passed into the possession of her successor, the appellant (Code Civ. Proc., sec. 1963), and there is neither allegation nor evidence to the contrary. The sole object of the action disclosed by the complaint is the recovery of money alleged to have been collected by defendant from the New England Mutual Life Insurance Company for the use of the estate of F. C. Suhr, under a special contract with the administratrix. Having failed to prove the alleged contract, appellant seeks to recover upon a constructive involuntary trust, *ex maleficio*, as to which there is not the slightest intimation in the complaint. Nor is the evidence sufficient to raise such a trust, since no party appears to have been injured by the transactions of which it is said to have been constructed; while it does appear that its effect would be to compel the defendant to pay the sum demanded twice—an effect never sanctioned by a court of equity, except in favor of a legal right or superior equity of another party.

I think the judgment and order should be affirmed.

BELCHER, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

GAROUTTE, J.,      VAN FLEET, J.,
HARRISON, J.,      DE HAVEN, J.,
McFARLAND, J.,   BEATTY, C. J.,
FITZGERALD, J.